940

Luis G. Lloréns Delgado, demandante y apelante, *v.* La Junta Administrativa del Muelle Municipal de Ponce, etc., demandada y apelada.

Núm. 8874.—*Sometido:* Mayo 5, 1944. *Resuelto:* Julio 10, 1944.

*R. Hernández* Matos, abogado del apelante; *Erasto Arjona Siaca*, abogado de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La cuestión fundamental que debemos resolver en este recurso es si la Junta Administrativa del Muelle Municipal de Ponce (a la cual nos referiremos en lo sucesivo como "la Junta"), tiene facultad para otorgar un contrato de arrendamiento de servicios por un término de cuatro años, sin la aprobación por la Asamblea Municipal de Ponce del sueldo fijado en dicho contrato.

La Junta fué creada a virtud de una franquicia concedida en 20 de noviembre de 1911 al Municipio de Ponce por el antiguo Consejo Ejecutivo, intitulada "An ordinance granting to the Municipality of Ponce, Porto Rico, authority to construct, maintain and operate a pier, on the shore of Ponce habor, at Peñoncillo Point."[1]

---

[1] La sección 9 de dicha franquicia, que es la primordialmente envuelta en este recurso, lee como sigue:

"Section 9.—That the pier to be constructed and operated by virtue of this ordinance shall be managed by a board, whose management, qualifications and tenure of office shall be as hereinafter set forth. Said board shall be known as the Board of Management and *shall have complete control of the management, operation and conservation of the pier structure, and so far as not incompatible with the terms of this ordinance,* or with the terms of any mortgage or bonded indebtedness to which the pier structure may be subjected, *shall have powers and duties similar to a board of directors in an ordinary commercial corporation,* but shall have no right to sell, lease or mortgage said pier without the consent of the Municipal Council, *and shall have no right to grant any special rights or privileges to any one.*

"*Said board shall have the right to employ such personnel, as in its judgment may be necessary properly to operate said pier and wharf, and to fix and determine the compensation of all employees, as well as the total estimated receipts and expenses for administrative purposes, and this total amount shall be submitted for the approval of the Municipal Council; and in the event that the budget is not so approved by the Municipal Council, it shall be submitted to the Executive Council for decision and adjustment, the action of which shall be final.*

"*   *   *   *   *   *   *   *

"The Harbor fees, etc., and warehouse fees, and all other receipts accruing on account of said pier, wharf and warehouse, as fixed by the board of manage-

El 3 de enero de 1941 la Junta estaba compuesta por los siguientes miembros: Eugenio Le Compte, Arturo Castro, Jr., Teodoro Moscoso, Rafael Ángel Torres y Guillermo Cortada. En esa fecha la Junta y el demandante, Luis G. Lloréns Delgado, que desde varios meses antes venía desempeñando el cargo de Superintendente del Muelle, celebraron un contrato; elevado a escritura pública, mediante el cual Lloréns se comprometió a desempeñar la misma plaza de Superintendente durante un período de cuatro años, a vencer el día 3

ment and approved by the Executive Council, shall be collected by the board of management or its assistants, employees, etc. *and turned over to the municipal treasurer every day.* The salaries of the personnel and running expenses of said pier, wharf and warehouse, shall be paid by the municipal tresaurer upon vouchers signed by the manager and countersigned by the secretary of the board of management, with the right of the board of management to intervene at any time.

"*The net receipts from the operation of the wharf, pier and warehouse, after paying salaries and operating expenses,* shall be set aside by the board of management *and the municipal treasurer to pay the annual interest and establish the annual proportion of the sinking fund of the municipal loan effected from the People of Porto Rico,* for the purpose of building and constructing this improvement, and *after* such applications *to pay interest* and establish the sinking fund *then the board of management, with the approval of the municipal council,* may apply such portion of or the balance remaining as may be necessary for the repair and upkeep of the pier and appurtenances thereto, and to removing any obstacles to the free use of the pier. After such application has been made, *the remainder shall be placed at the free disposal of the municipal council and shall be lawfully applied and expended in such other city improvements as may be deemed necessary.*

"The board of management hereinbefore provided for shall consist of five members to be appointed by the Governor with the advice and consent of the Executive Council, *two of whom shall be members of the Municipal Council,* and the other three representative business men resident within Municipal District of Ponce, *one of whom shall be selected by the Governor from a list of nine men recommended by the Municipal Council.* The two members appointed from the municipal Council shall hold office for four years, and the other three members for two years. Said board of management, one or all, may be removed at any time by the Governor of Porto Rico for just cause, such action by the Governor being final. In case of death, disabiltiy, resignation or removal before the expiration of a term of office a substitute shall be appointed by the Governor, as above provided, to complete the unexpired portion of said term of office." (Bastardillas nuestras.)

de enero de 1945, por la compensación de $100 quincenales.(²)
Para el día 30 de junio de 1941, habían expirado los términos
por los cuales habían sido nombrados Le Compte, Castro, Jr.
y Moscoso, por lo que el Gobernador de Puerto Rico, con
arreglo a las disposiciones de la franquicia, había extendido
nombramiento a favor de Juan Cabrer, Juan Ruiz Mora
(miembros de la Asamblea Municipal de Ponce) y de Ismaro
Torruella, comerciante, a recomendación de dicha Asamblea.
La Junta, así reorganizada, el 30 de junio de 1941 tomó un
acuerdo a virtud del cual declaró vacante el cargo de Superin-
tendente de dicho muelle, y dejó cesante al demandante a
partir del día 1°. de julio de 1941.(³) Lloréns prestó sus
servicios como Superintendente, recibiendo quincenalmente la
suma de $100 hasta que fué separado de su cargo en 30 de
junio de 1941, y luego demandó a la Junta reclamando $8,400
en concepto de daños y perjuicios por violación del contrato.

(²) Entre los servicios encomendados al Sr. Lloréns a virtud de la cláusula
primera del contrato, están los siguientes:

"Don Luis G. Lloréns Delgado por la presente se compromete y obliga a
prestar sus servicios personales como Superintendente del Muelle Municipal de
Ponce, teniendo a su cargo la dirección inmediata del movimiento de carga y
descarga de dicho Muelle Municipal de Ponce, la conservación de la estructura
del Muelle y todos sus implementos, *el nombramiento y pago de empleados para
la carga y descarga de vapores, y demás deberes y obligaciones necesarias para
la mejor administración de los negocios a que se dedica el Muelle Municipal de
Ponce.*" (Bastardillas nuestras).

(³) El acuerdo de la Junta, no se refería al cargo de Superintendente, exclu-
sivamente, sino que incluía trece puestos adicionales y dice, en lo pertinente así:

"Que a los fines de llevar a cabo una reorganización total de los negocios
del Muelle, se tome el acuerdo por esta Junta Administrativa del Muelle Muni-
cipal de Ponce, de declarar vacantes en el día de hoy las siguientes plazas de
Plantilla y que este acuerdo se haga público para conocimiento de todas las per-
sonas interesadas:

| | |
|---|---|
| 1. Superintendente | 8. Inspector de carga |
| 2. Cajero | 9. Practicante |
| 3. Subadministrador | 10. Mecánico |
| 4. Tenedor de Libros. | 11. Portero |
| 5. Listero | 12. Dos *watchmen* |
| 6. Guarda almacén | 13. Dos barrenderos aux. |
| 7. Celador mayor | 14. Un *watchman* diurno. |

"Discutida la moción del Sr. Ruis Mora, es aprobada por tres votos en favor
y uno en contra, el del Sr. Cortada."

No hay nada en la prueba presentada que demuestre que la Asamblea Municipal de Ponce tuviera conocimiento del contrato celebrado por la Junta con Lloréns y tampoco prueba alguna que demuestre que la Junta sometiera a la Asamblea Municipal, para su aprobación, el sueldo fijado a Lloréns por cuatro años. El presupuesto del Muelle para el año fiscal 1940–41 fué enviado a la Asamblea Municipal para su aprobación el 12 de julio de 1940—cerca de seis meses antes de otorgarse el contrato entre la Junta y Lloréns el 3 de enero de 1941—y no hay prueba alguna de que fuera aprobado por la Asamblea. En dicho presupuesto la partida para pago de "Personal del Muelle", aparece aprobada en $13,500, sin especificar los sueldos. El presupuesto del Muelle para el año fiscal 1941–42 fué sometido por la Junta a la Asamblea Municipal el 25 de junio de 1941 y aprobado por la Asamblea al día siguiente para comenzar a regir el 1°. de julio y en él se especifica el "Personal de plantilla" comenzando con "Un Jefe de Muelle e Inspector de Obras" con un sueldo de $195 mensuales.

La corte inferior desestimó la demanda y el apelante en este recurso alega que erró, 1, al resolver que la Junta está subordinada al Municipio de Ponce y por tanto afectada al resultado de las elecciones generales; 2, al resolver que la Junta que otorgó el contrato era una entidad distinta a aquélla que lo quebrantó y que ésta no estaba obligada por el contrato; 3, al resolver que el contrato nunca fué perfeccionado por no haber sido aprobado por la Asamblea Municipal; 4, al resolver que el contrato privó a la Junta sucesora de la facultad de cambiar el personal del Muelle; y 5, al resolver que el contrato está en pugna con la franquicia, la política pública y con una sana administración pública.

No hemos de seguir al apelante en la discusión extensa y separada que hace en su alegato de cada uno de los errores señalados. Ya hemos dicho que la cuestión fundamental envuelta es una: si la Junta tenía poder para otorgar el contrato por cuatro años sin la aprobación de la Asamblea

Municipal del sueldo fijado al apelante. Nos confrontamos inmediatamente con el alcance de la sección 9 de la franquicia, supra, en cuanto a las limitaciones que impone a la Junta.

Un análisis detenido de dicha sección demuestra que aun cuando se le concedieron poderes amplios y generales para "administrar, operar y conservar" el Muelle de Ponce y que dichos "poderes y deberes" serían similares a los de una "junta de directores de una corporación comercial ordinaria", se especifica que "no tendrá derecho a conceder ningún derecho o privilegio especial a nadie". Inmediatamente se especifica que la Junta tendrá derecho a "emplear aquel personal, que a su juicio sea necesario para operar debidamente dicho muelle y de fijar y determinar la compensación de todos los empleados, además de los ingresos y gastos estimados para fines administrativos." Empero, "esta suma total", es decir, la compensación de todos los empleados más el estimado de ingresos y gastos, *"será sometida a la Asamblea Municipal para su aprobación y en caso de que el presupuesto no sea aprobado por la Asamblea Municipal,* será sometido al Consejo Ejecutivo para su decisión y ajuste, siendo su actuación final." (Bastardillas nuestras.) Se dispone, además, que "los sueldos del personal . . . serán pagados por el tesorero municipal" ya que todos los ingresos del muelle deben "ser entregados (por la Junta) a dicho tesorero municipal todos los días." Por último dicha sección provee la forma en que se distribuirán los ingresos netos del muelle, después de pagarse los sueldos y gastos de operación, con la intervención del tesorero municipal y de la Asamblea Municipal y si existe algún "sobrante se pondrá a la disposición de la Asamblea Municipal para ser legalmente empleado y gastado en aquellas mejoras de la ciudad que se estimen necesarias."

¿Puede sostenerse, como sostiene el apelante, que la Junta bajo estas disposiciones, es una entidad completamente autónoma e independiente de la Asamblea Municipal? Si además de las limitaciones anteriormente reseñadas tomamos en con-

sideración la forma en que se nombran sus miembros—dos asambleístas municipales y otro miembro recomendado por la Asamblea Municipal—la pregunta debe contestarse en la negativa. La intención del Consejo Ejecutivo al conceder esta franquicia de carácter especial al Municipio de Ponce fué la de crear en ella una Junta que administrara, bajo la supervisión de la Asamblea Municipal en cuanto a la aprobación de todo sueldo pagado o gasto incurrido, el muelle que se 'iba a construir. Es cierto que la Junta tiene completo control de la administración del muelle (que es una dependencia municipal) y para ello puede seleccionar, nombrar y fijarle los sueldos a sus empleados, empero todo ello con una limitación muy importante; que dichos sueldos tienen que ser sometidos, en un presupuesto anual, a la aprobación de la Asamblea Municipal. En el caso de autos la prueba demostró que esto nunca se hizo. En el correspondiente al año fiscal 1940-41 no pudo haberse hecho porque a la fecha en que se sometió el presupuesto de la Junta a la Asamblea no existía contrato alguno con el apelante y en el del año 1941-42 porque ya la Junta, según reorganizada, había suprimido el cargo.

El apelante, al contratar con la Junta, se presume que conocía la autoridad limitada de ésta para otorgar el contrato, pues la franquicia creando la Junta implícitamente formaba parte del contrato. Siendo esto así, somos de opinión que la corte inferior no erró al resolver que la Junta carecía de poder para otorgar un contrato por cuatro años. Es más, la misma franquicia al conceder amplia facultad a la Junta para administrar los asuntos del muelle implícitamente prohibe que se delegue en otra persona esos poderes, en la forma en que se pretendió hacer en el contrato con el apelante, a quien se concedía el poder de hacer nombramientos de empleados y el de pagarles sus sueldos, facultad ésta exclusiva de la Junta. De hecho lo que se pretendió hacer fué atar las manos a la nueva Junta durante cuatro años.

El apelante a través de su alegato trata de demostrar que la actuación de la Junta fué inspirada por motivos

políticos y arguye que en la administración del Muelle de Ponce no deben prevalecer motivaciones de carácter político y que las mismas no deben ser amparadas por la cortes. No tiene gran fuerza persuasiva la posición que asume el apelante. Tomamos conocimiento judicial de que en noviembre de 1940 se celebraron elecciones generales en Puerto Rico y que como consecuencia de ellas en el mes de enero de 1941 ocurrió un cambio total en la administración municipal de Ponce. Siendo esa la situación, al demandante, que trabajaba en el muelle de Ponce, sin contrato alguno, se le ofreció por la Junta saliente y aceptó un contrato por cuatro años— hasta enero de 1945—a sabiendas del cambio ocurrido en la administración del Municipio de Ponce, hecho que, necesariamente, a virtud de la franquicia, tenía que ocasionar un cambio de la mayoría de los miembros de la Junta. Basta exponer los hechos para que ellos sean suficiente contestación al alegado prurito de saneamiento político expuesto por el apelante.

■ Es cierto que la Junta es una de carácter continuo y que la sustitución de unos miembros por otros no hace que la Junta, como tal, sea una distinta. Esto no significa, sin embargo, que los miembros de la Junta en determinada fecha puedan, por sus actuaciones, continuar de hecho dominando y controlando la administración del muelle de Ponce en tal forma que conviertan en letra muerta durante cuatro años los poderes concedidos por la franquicia a la Junta. El contrato otorgado en enero de 1941 a favor del apelante tiene este alcance y no erró la corte inferior al sostener que está en contra ''de la franquicia, de la política pública y de la más sana administración, ya que la Junta es un organismo creado para un fin público.''

Esta conclusión está ampliamente sostenida por la preponderancia de la jurisprudencia.[4] No consideramos necesario, a los fines de este caso, entrar a considerar y resolver

---

[4] Véase la anotación en 70 A.L.R. 794, especialmente a las páginas 799 a. 802.

el alcance del poder gubernamental o de propiedad que pueda estar envuelto en la actuación de la Junta al otorgar el contrato. Limitamos nuestra decisión a los hechos específicos de que, 1, la Junta no podía contratar con el apelante por cuatro años porque el sueldo fijado en el contrato necesitaba la aprobación de la Asamblea Municipal anualmente y dicho sueldo nunca fué aprobado; y 2, la Junta que existía en enero de 1941 no podía privar de los poderes que para administrar el muelle le concede la franquicia a la Junta que durante cuatro años sucesivos pudiera existir de acuerdo con las variaciones que en sus miembros pudieran ocurrir.

*Debe confirmarse la sentencia apelada.*